[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
Denis F. Moore ("claimant") filed a claim for unemployment compensation benefits against his former employer, the plaintiff, Regency Limousine, Inc. ("employer"). The employer contends that CT Page 6240 the claimant was terminated on November 14, 1996, for wilful misconduct because he had fallen asleep at the wheel while transporting a customer in the employer's limousine. The employer argues that the claimant is ineligible for unemployment benefits. An examiner for the named defendant, the administrator of the Unemployment Compensation Act, General Statutes § 31-222 et seq., denied Moore's application for unemployment compensation benefits on the basis that he had engaged in wilful misconduct by falling asleep at the wheel of his limousine.
Moore appealed the administrator's decision to the Employment Security Appeals Division, pursuant to General Statutes §§ 31-241
and 31-242. The matter was referred to an appeals referee for a hearing de novo. The referee stated that the issue was whether Moore had been discharged for wilful misconduct. The referee made the following factual findings: (1) the claimant had awakened at 4:30 a.m. the morning of November 14, 1996, with abdominal pains; (2) he went to a doctor later that day and was given some medication; (3) the claimant made a round trip to Kennedy Airport around 9:00 p. m. and thereafter was instructed to make a trip to LaGuardia Airport starting around 10:30 p. m. that same evening; (4) he advised the dispatcher that he was tired and sleepy; (5) on the return trip, the claimant nodded off several times, missed a turn and swerved his vehicle; and (6) his passenger had to yell at the claimant to keep him awake. The referee concluded that although the claimant had engaged in misconduct, it was not intentional or purposeful misconduct or in reckless disregard of the probable consequences of his actions. Thus, the referee reversed the administrator's decision denying benefits.
The employer appealed this decision to the Employment Security Appeals Division Board of Review (board) in accordance with General Statutes § 31-249. The employer argued that its former employee, the claimant, had engaged in wilful misconduct by knowingly jeopardizing the safety of the passenger. The board remanded the case to the referee to take additional evidence, including the testimony of the passenger, Michael Graupner, regarding exactly what happened on the return trip from LaGuardia.
The referee conducted a second hearing and found that: (1) the claimant caused the vehicle to swerve while exiting onto I-684; (2) while on the Merritt Parkway other vehicles honked to warn the claimant of his driving; (3) the claimant told Graupner that he was all right, and he then ceased to swerve the limousine; and (4) after exiting from the Parkway, the claimant CT Page 6241 nodded off again, causing Graupner to yell at him again and the limousine had to swerve to avoid another vehicle stopped at a stop sign down the road in front of him. The referee pointed out that the claimant could have pulled off the road at a rest stop for coffee. The plaintiff did not have a policy forbidding such a stop if drivers are sleepy. Nevertheless, the referee again concluded that the claimant's misconduct was not wilful, but rather was "at least i[n] part due to fatigue." The referee determined that the claimant was entitled to benefits because he did not engage in wilful misconduct.
The employer again appealed to the board, which reviewed the record, including a tape recording of the hearing before the referee. The board concluded in a two to one decision dated July 23, 1997, that the claimant's conduct was not deliberate or wilful because of the existence of several "mitigating factors" which were: (1) he had awakened very early on the morning of his discharge because of a physical ailment; (2) the claimant had advised the dispatcher he was fatigued but was told to make the trip to LaGuardia because no other limousine drivers were available; and (3) the claimant had no other viable alternatives such as admitting to the dispatcher that he was very sleepy and asking for a substitute driver. Thus, the board adopted the referee's findings and affirmed the decision granting benefits to the claimant on the basis that he had not engaged in wilful misconduct.
The dissenting member of the board, A. M. Kyle, pointed out that professional drivers, such as the claimant' must be held to a higher standard. He also indicated that there were no mitigating circumstances for the claimant's misconduct in putting his passenger at risk, and that the claimant could have rested during the afternoon after seeing the doctor and before going to work. The court believes that board member Kyle accurately summarized this case in one cogent sentence. "The driver abdicated his responsibility to his passenger and to the employer's interests by pressing on without taking steps to insure the safety of his mission despite the testimony of both the claimant and his customer that the claimant was in fact dozing off and driving erratically." For the reasons hereinafter stated, however, this court does not have the authority to overrule the majority opinion of the board.
The employer, hereinafter referred to as the plaintiff, appeals to this court, pursuant to General Statutes § 31-249b. CT Page 6242 The plaintiff argues that the claimant engaged in wilful misconduct by continuing to drive when he had the right to stop and rest or get coffee; that the claimant's credibility was minimal; and that the claimant had deliberately and knowingly placed his passenger in danger. The board filed a return of record, and a hearing was held before this court on February 4, 1998.
"[T]he purpose of the unemployment compensation act is to provide income for the worker earning nothing because he is out of work through no fault or act of his own. . . ." (Citations omitted.) Cervantes v. Administrator, 177 Conn. 132, 136,411 A.2d 921 (1979). "[T]he [unemployment compensation] act is remedial and, consequently, should be liberally construed in favor of its beneficiaries. . . . Indeed, the legislature underscored its intent by expressly mandating that the act shall be construed, interpreted and administered in such manner as to presume coverage, eligibility and nondisqualifaction in doubtful cases. General Statutes § 31-274 (c)." (Citations omitted; internal quotation marks omitted.). Mattatuck Museum-MattatuckHistorical Society, v. Administrator, 238 Conn. 273, 278,679 A.2d 347 (1996).
The Supreme Court has indicated that this court has a limited role when reviewing an unemployment compensation appeal. "To the extent that an administrative appeal, pursuant to General Statutes § 31-249b, concerns findings of fact, a court is limited to a review of the record certified and filed by the board of review. The court must not retry the facts nor hear evidence. . . . If, however, the issue is one of law, the court has the broader responsibility of determining whether the administrative action resulted from an incorrect application of the law to the facts found or could not reasonably or logically have followed from such facts. Although the court may not substitute its own conclusions for those of the administrative board, it retains the ultimate obligation to determine whether the administrative action was unreasonable, arbitrary, illegal or an abuse of discretion." (Citations omitted.) United ParcelService, Inc. v. Administrator, 209 Conn. 381, 385-86,551 A.2d 724 (1988). "As a general rule, `[t]he application of statutory criteria to determine a claimant's eligibility for unemployment compensation under General Statutes §§ 31-235 and 31-236
involves mixed questions of fact and law in which the expertise of the administrative agency is highly relevant.'" United ParcelService, Inc. v. Administrator, supra, 209 Conn. 386. Moreover, the construction placed upon a statute or regulation by the CT Page 6243 agency responsible for its enforcement and administration is entitled to great deference. Griffin Hospital v. Commission onHospitals Health Care, 200 Conn. 489, 496, 512 A.2d 199, appeal dismissed, 479 U.S. 1023, 107 S.Ct. 781, 93 L.Ed.2d 819
(1986).
Furthermore, General Statutes § 31-249b provides, in pertinent part: "[I]n any appeal, any finding of the referee or the board shall be subject to correction only to the extent provided by section 519 of the Connecticut Practice Book." Practice Book § 519(a), now Practice Book (1998 Rev.) §22-9(a), provides in pertinent part: "The court does not retry the facts or hear evidence. It considers no evidence other than that certified to it by the board, and then for the limited purpose of determining whether the finding should be corrected, or whether there was any evidence to support in law the conclusions reached. It cannot review the conclusions of the board when these depend upon the weight of the evidence and the credibility of witnesses."
Practice Book § 515A(b), now Practice Book (1998 Rev.) § 22-4, provides in pertinent part that if an appellant wants the board's findings corrected, he must, within two weeks after the record is filed with the court, "file with the board a motion for the correction of the finding" accompanied by either portions of or the entire transcript.
Practice Book § 519(b), now Practice Book (1998 Rev.) § 22-9(b), provides in pertinent part: "Corrections by the court of the board's finding will only be made upon the refusal to find a material fact which was an admitted or undisputed fact, upon the finding of a fact in language of doubtful meaning so that its real significance may not clearly appear, or upon the finding of a material fact without evidence." In Calnan v.Administrator, 43 Conn. App. 779, 785, 686 A.2d 134 (1996), the court stated that filing a motion with the board for correction of the findings is "a necessary prerequisite to a challenge to the board's decision." Accord Chavez v. Administrator,44 Conn. App. 105, 106-7, 686 A.2d 1014 (1997). Thus, in the absence of a motion by the plaintiff to correct pursuant to Practice Book § 515A, the board's factual findings and those conclusions which are based on the weight of the evidence and the credibility of witnesses cannot be challenged.
Furthermore, in the present appeal, the administrator points CT Page 6244 out correctly in the motion for judgment that the plaintiff, a corporation, is appearing pro se in this court. However, "[i]n Connecticut, a corporation may not appear pro se. . . ." (Internal quotation marks omitted.) Expressway Associates II v.Friendly Ice Cream Corp. of Connecticut, 34 Conn. App. 543, 546,642 A.2d 62, cert. denied, 230 Conn. 915, 645 A.2d 1018 (1994). The present appeal is subject to dismissal on this ground alone. Id., 551.
Even if the court were to reach the merits of the appeal, the result cannot be changed. The issue is whether "the decision of the board was logically and rationally supported by the evidence, and was not unreasonable, arbitrary, illegal or an abuse of the board's discretion." Calnan v. Administrator, supra,43 Conn. App. 785.
General Statutes 31-236(a)(2)(B) provides in pertinent part that an individual is ineligible for benefits if he was discharged for "wilful misconduct in the course of his employment," or for "just cause." "Wilful misconduct" is defined as "deliberate misconduct in wilful disregard of the employer's interests, or a single knowing violation of a reasonable and uniformly enforced rule or policy, when reasonably applied." General Statutes § 31-236(a)(15). "Just cause" is defined in the same statute as a "single act of willful misconduct in the course of an individual's employment which seriously endangers the life, safety or property of his employer, fellow employees or the general public."
Section 31-236-26(a) of the Regulations of Connecticut State Agencies provides that in order to find that any act or omission constitutes willful misconduct, the administrator must find that "the individual engaged in deliberate misconduct in willful disregard of the employer's interest."[1]
Section 31-236-26a provides that "[I]n order to establish that an individual was discharged or suspended for deliberate misconduct in willful disregard of the employer's interest, the Administrator must find all of the following: (a) Misconduct. To find that any act or omission is misconduct the Administrator must find that the individual committed an act or made an omission which was contrary to the employer's interest, including any act or omission which is not consistent with the standards of behavior which an employer, in the operation of his business, should reasonably be able to expect from an employee. (b) CT Page 6245Deliberate. To determine that misconduct is deliberate, the Administrator must find that the individual committed the act or made the omission intentionally or with reckless indifference for the probable consequences of such an act or omission. (c) WillfulDisregard of the Employer's Interest. To find that deliberate misconduct is in willful disregard of the employer's interest, the Administrator must find that: (1) the individual knew or should have known that such act or omission was contrary to the employer's expectation or interest; and (2) at the time the individual committed the act or made the omission, he understood that the act or omission was contrary to the employer's expectation or interest and he was not motivated or seriously influenced by mitigating circumstances of a compelling nature. Such circumstances may include: (A) events or conditions which left the individual with no reasonable alternative course of action; or (B) an emergency situation in which a reasonable individual in the same circumstances would commit the same act or make the same omission, despite knowing it was contrary to the employer's expectation or interest."
The board's determination that mitigating circumstances exist for the claimant's misconduct finds support in the record of this case, and was within the board's competence. Therefore, it should not be disturbed. "[T]he Superior Court does not retry the facts or hear evidence in appeals under our unemployment compensation legislation. Rather, it acts as an appellate court to review the record certified and filed by the board of review." Finkensteinv. Administrator, 192 Conn. 104, 112, 470 A.2d 1196 (1984). "[O]ur standard of review in administrative proceedings must allow for judicial scrutiny of claims such as constitutional error, jurisdictional error, or error in the construction of an agency's authorizing statute." Id., 113.
In addition, as was said in Latina v. Administrator,Unemployment Compensation Act, 21 Conn. L. Rptr. No. 9, 302 (April 13, 1998), a case involving a claimant who fell asleep on the job: "[T]he facts found by the appeals referee are more consistent with someone who foolishly put himself in a situation where his late hours, lack of medicine and abnormal sleep habits resulted in his being overcome with fatigue at work. Such a situation is not wilful misconduct."
Thus, this court is not in a position to sustain the plaintiff's appeal because of: (1) its very limited role in appeals of this nature; (2) the plaintiff's attempt to appear pro CT Page 6246 se; and (3) the absence of a motion to correct filed by the plaintiff. Therefore, the defendant board's motion for judgement dated November 5, 1997, is granted. The board's decision is affirmed, and judgment hereby enters dismissing the plaintiff's appeal.
So Ordered.
Dated at Stamford, Connecticut, this 13th day of May, 1998.
William B. Lewis, Judge